Slip Op. 13-97

# UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |  |
|---|---|---|
| UNITED STATES STEEL CORP. | : | |
| Plaintiff, | : | |
| v. | : | Before: R. Kenton Musgrave, Senior Judge |
| UNITED STATES, | : | Court No. 12-00070 |
| Defendant, | : | |
| and | : | |
| HYUNDAI HYSCO LTD., | : | |
| Defendant-Intervenor. | : | |

**OPINION**

[Commerce's determination is upheld.]

Dated: July 31, 2013

  *Jeffrey D. Gerrish*, *Nathaniel B. Bolin*, and *Robert E. Lighthizer*, Skadden, Arps, Slate, Meagher & Flom, LLP, of Washington, D.C., for plaintiff.

  *Tara Hogan*, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for defendant. With her on the brief were *Stuart F. Delery*, Principal Deputy Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Reginald T. Blades, Jr.*, Assistant Director. Of counsel on the brief was *Sapna Sharma*, Office of Chief Counsel for Import Administration, U.S. Department of Commerce.

  *Brady W. Mills* of Morris, Manning & Martin, LLP, of Washington D.C. for defendant-intervenors. With him on the brief were *Donald B. Cameron*, *Julie C. Mendoza*, *R. Will Planert* and *Mary S. Hodgins*.

    **Musgrave, Senior Judge**: Plaintiff United States Steel Corp. ("Plaintiff") challenges the Department of Commerce's ("Commerce") final results in the 2009

countervailing duty administrative review of *Certain Corrosion-Resistant Carbon Steel Flat Products from the Republic of Korea*, 77 Fed. Reg. 13093 (Dept. Commerce, Mar. 5, 2012) Public Record Part 1 Doc. ("PR1") 49 ("Final Results"). Plaintiff challenges the benchmark interest rate used by Commerce to determine whether and to what extent sales in the U.S. of Defendant-Intervenor Hyundai Hysco Ltd.'s ("Hysco") products were affected by a countervailable subsidy.

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction pursuant to 28 U.S.C. § 1581(c). Commerce's final determination will be upheld unless it is found "to be unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). More specifically, when reviewing agency determinations, findings or conclusions for substantial evidence the court assesses whether the agency action is reasonable given the record as a whole. *Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1350-51 (Fed. Cir. 2006).

Separately, the two-step framework provided in *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-45 (1984), governs judicial review of Commerce's interpretation of the antidumping statute. *See United States v. Eurodif S.A.*, 555 U.S. 305, 316 (2009) (Commerce's "interpretation governs in the absence of unambiguous statutory language to the contrary or unreasonable resolution of language that is ambiguous"). Commerce's interpretation will not be set aside unless it is "arbitrary, capricious, or manifestly contrary to the statute." *Chevron*, 467 U.S. at 844, 104 S.Ct. 2778.

# FACTS

Commerce reviewed loans that Hysco received from the government-owned Export-Import Bank of Korea (KEXIM), for the period of calendar year 2009. Commerce had previously determined that the KEXIM program loans were countervailable. Issues and Decision Memorandum in *Corrosion-Resistant Carbon Steel Flat Products from the Republic of Korea*, 77 Fed. Reg. 13093 (Dept. Commerce Mar. 5, 2012) ("I&D Memo") at 2-3.

The KEXIM loans were short-term, variable rate loans, whose interest rate changed monthly. I&D Memo at 3. Hysco received the KEXIM loans in 2008 and by their terms they extended into 2009. Commerce initially determined that the KEXIM loans should be benchmarked against all 2008 commercial loans received by Hysco. *Corrosion-Resistant Carbon Steel Flat Products from the Republic of Korea*, 76 Fed. Reg. 54208 (Dept. Commerce Aug. 31, 2011) ("Preliminary Results"). Hysco pointed out that the 2008 interest rates were much higher than the rates charged in 2009 and argued that the 2009 KEXIM loan payments should be judged against annual average 2009 interest rates. In response, Commerce decided that only Hysco's short term variable interest rate loans were comparable to the KEXIM loans and requested further information from Hysco. Commerce removed Hysco loans taken out in 2009 from the benchmark, because the KEXIM loans were taken out in 2008. *Final Results*, 77 Fed. Reg. at 13093.

Commerce then determined how the commercial loans' variable interest rates were calculated. It identified the commercial loans' monthly base CD rate regularly reported by the Korean Financial Investment Association, and their specific fees and interest rate spreads. I&D Memo at 10-11. Commerce then applied a weighted average calculation to determine

monthly rates for the 2009 review period. Plaintiff's Memorandum In Support of Motion for Judgment on the Agency Record under Rule 56.2 ("Pl. Br.") at 11, and sources cited therein. Commerce concluded that the resulting rates reflected the interest rates that Hysco would have paid had the commercial loans extended into 2009 and been paid on the same date as Hysco's KEXIM loan payments. I&D Memo at 10-11. Commerce thus determined what the short-term commercial loan rates would have been had Hysco made payments under the 2008 loans in 2009. I&D Memo at 11; *see* 19 C.F.R. § 351.505. Commerce stated:

> HYSCO took out comparable, variable rate, short-term financing in 2008, which is the year in which the KEXIM short-term financing was taken out. Therefore, we used the variable rate loans provided by commercial banks during 2008 to determine our weighted-average commercial benchmark and compared the benchmark rate to the interest rate charged on the KEXIM loans. To determine the benefit from the KEXIM loan, we then compared the amount of actual interest paid on the KEXIM loan to the amount HYSCO should have paid at the commercial benchmark.

I&D Memo at 11. Commerce found that the *ad valorem* subsidy rate fell from a preliminary finding of 0.09% to the final determination of only 0.03% subsidy. I&D Memo at 3. Commerce determined for this review period that the benefit enjoyed by Hysco under the program was a *de minimis* rate of 0.46% and thus not countervailable. Final Results, 77 Fed. Reg. at 13094.

## ANALYSIS

The relevant statute provides:

(E) Benefit conferred

A benefit shall normally be treated as conferred where there is a benefit to the recipient, including--- *  *  *

> (ii) in the case of a loan, if there is a difference between the amount the recipient of the loan pays on the loan and the amount the recipient would pay on a comparable commercial loan that the recipient could actually obtain on the market. . . .

19 U.S.C. § 1677(5)(E)(ii). Commerce determines a loan benchmark by looking at loans the company received from commercial lenders, 19 C.F.R. § 351.505(a)(3)(i), provided those loans are comparable to the government loan involved. 19 C.F.R. § 351.505(a)(2)(i). Commerce "normally will rely on the actual experience of the firm in question in obtaining comparable commercial loans." 19 C.F.R. § 351.505(a)(3)(i).

Plaintiff argues that Commerce incorrectly used an "artificial" benchmark rate derived from commercial loans made to Hysco in 2008. Pl. Br. at 10. "Commerce's loan benchmarks represented purely artificial loans that it constructed, not the interest rates charged on loans that HYSCO -- or any other company -- actually obtained or could have obtained from commercial lenders in Korea." Pl. Br. at 11. Plaintiff implies that the actual commercial loan rates charged to Hysco (had it obtained any such loans in 2009) would have been much greater than the ones the Commerce calculated using the formula from the 2008 commercial loan agreements and the 2009 base rates. Plaintiff's Reply Brief ("Pl. Reply") at 3-4, 9.

The government points out that Commerce calculated a comparable benchmark for Hysco's short term, variable interest rate KEXIM loans which accounted for the variability of interest rates over the review period. Defendant's Opposition to Plaintiff's Motion for Judgment on the Agency Record ("Deft. Br.") at 5-6. In the absence of any specific guidance from the statute or regulations to account for the variability of interest rates on variable rate loans, Commerce developed a reasonable methodology to do so in accordance with 19 U.S.C. § 1677(5)(E)(ii) and 19 C.F.R. § 351.505(a)(2)(iv). Deft. Br. at 12. Commerce accounted for the variability of the interest rate on the KEXIM loans by calculating what the interest rate for comparable commercial loans would have been had the payments been made on the same dates

as payments were made on the KEXIM loans.  Deft. Br. at 6, 13.

Hysco points out that "[h]ad Commerce used the interest rates on the [commercial] loans that were paid in 2008 it would have been comparing variable interest rates set in *2008* with variable interest rates paid on the KEXIM loans in *2009*."  Hyundai Hysco Ltd. Brief in Opposition to the Motion of Plaintiff U.S. Steel Corp. for Judgment on the Agency Record ("Hysco Br.") at 10 (emphasis in original).  Hysco argues that using the higher 2008 rates to benchmark 2009 interest payments would have overstated the benefit to Hysco of the KEXIM loans.  Hysco Br. at 11.

Plaintiff admits that the commercial loans obtained by Hysco in 2008 were comparable to the government loans in question.  Pl. Reply at 2.  Indeed, plaintiff states that the 2008 commercial loans satisfy "each and every one of the factors considered by Commerce when assessing comparability of short term loans."  Pl. Reply at 3.  But plaintiff seeks to use those loans *in toto*, including their 2008 rates, to judge the 2009 short term rates charged by the government.  Pl. Reply at 2-3.  This argument fails because the rates differed significantly during the two periods, a factor Commerce recognized.

Plaintiff also argues that Commerce should have used a national average interest rate in this case because Hysco did not take out any commercial loans in 2009.  Pl. Br. at 16-17, 19.  This argument fails because the regulation requires Commerce to judge the KEXIM loans by comparison with commercial loans taken out in the same year as the KEXIM loans.  Hysco took out the commercial loans relied upon by Commerce during 2008, the same year that the subject KEXIM loans were taken out.  I&D Memo at 10; 19 C.F.R. § 351.505(a)(2)(iv).  Furthermore, the court agrees with Commerce that the use of annual average interest rates is inappropriate

Court No. 12-00070                                                                                              Page 7

when Commerce benchmarks short term variable interest rate government loans.

The court finds plaintiff's arguments speculative and an invitation to interpose the court's own judgment for that of the agency. The court declines to do so. The court is not convinced that, as plaintiff claims, the benchmark rates determined by Commerce were "hypothetical" or "artificial". Plaintiff has failed to convince the court that Commerce has overstepped its bounds under *Chevron*. Commerce's use of the loan calculation methodology from Hysco's 2008 commercial loans in order to benchmark the payments Hysco made on the KEXIM loans in 2009 was appropriate under the applicable laws and regulations. The court has reviewed the record and finds that Commerce's decision was reasonable under the circumstances.

## CONCLUSION

Based upon the record developed before Commerce and upon the papers and proceedings before this court, for the reasons set forth above, the court sustains Commerce's decision to benchmark the KEXIM loans using 2008 commercial loan calculation methodology and 2009 variable interest rates.

                                                 /s/ R. Kenton Musgrave
                                                 R. Kenton Musgrave, Senior Judge

Dated: July 31, 2013
      New York, New York